Good morning, may I please the court. My name is Peter Wolfe. I represent Mr. Leon here. So this is a case that we actually can't win today, and maybe not any day, because it's controlled by the court's decision in Pineda Moreno. But what we can do and what I'm hoping we will accomplish is to convince this panel that Pineda Moreno is sufficiently incorrect in its analysis that the court would conclude that it's really a case that ought to go, the issue ought to go to the in-bank court to resolve the matter. Because the question of whether or not the standard in Davis, which had to do with agents' reliance upon clearly established binding authority, was met here I think was incorrectly decided by the panel in Pineda Moreno. And that is what you think is the key defect in Pineda Moreno, is just an overly expansive reading of the standard articulated in Davis? Well, no, actually I think Pineda Moreno articulated the standard in Davis correctly. What I think that went wrong is saying that the earlier court's decisions in Hufford and Maroyan had clearly established that the installation of an electronic device on a vehicle was mandated as okay by the Ninth Circuit. Well, but that's why, see I don't think, that's where I think you just differ with the way Pineda Moreno interpreted Davis. Davis could be interpreted the way you've argued, which is that there has to be authority specifically on point for the very practice that is now in question, or it could be construed as the panel did in Pineda Moreno, more broadly, kind of like a qualified immunity type test, where you say, well, maybe there was an on-point authority, but as long as the officers weren't, you know, grossly negligent or reckless in how they interpreted that existing authority, then it's okay. So that's pretty much what the district court did here, and that's where we think the district court's analysis of Davis was wrong, because the Davis test isn't a question of self-reliance, or the agents themselves in good faith interpreted the court's decisions in some manner that wasn't absurd, it wasn't reckless. What the Davis court said is, and this is a quote, it said, when binding appellate precedent specifically authorizes a particular police practice, well-trained officers will and should use that tool, et cetera, et cetera, et cetera. So if the Supreme Court says specifically authorizes, and you know, the court then goes on with this much broader language to say, well, as long as the officers weren't, I think the language they used is, as long as they weren't grossly negligent or reckless in the way they went about construing that existing authority, then there's no basis from a policy standpoint for applying exclusionary rule. That's the language I think Pineda-Moreno relied on, and I agree that those two statements, the one you just mentioned and the one I just mentioned, are in some tension. Well, that's true. They're both there. But Pineda-Moreno relied on two Ninth Circuit cases, which were of pretty ancient vintage by the time the court was looking at them, and they actually ignored the later decided case by the Supreme Court in Knotts, because in Knotts the court basically said, the Supreme Court said, more or less what happened in Hufford, the exact same thing that more or less happened in Hufford was what happened in Knotts. And the Supreme Court said, that's okay. But in response to the argument that the defendant was making in Knotts that, well, this would allow a drag net, the court said, hey, if we get to that point and we're not hearing the Knotts decision today, we'll take that up when we do. And that's what they did in Jones. They took it up. So to say, as the Pineda-Moreno panel did, that the circuit's precedence from the 1970s validated this practice that took place in Pineda-Moreno and the same practice that took place in Leon without discussing the Knotts decision, that's just not, I would say, straightforward intellectually in terms of what the state of the law is. Well, help me then. I'm open to your argument here. And I agree that it's not for this panel to maybe ultimately figure it out. But we had ninth circuit authority that said there was no trespass issue, which later got resolved in Jones. But at the time, there was no trespass issue in terms of the attachment, right? We're not claiming the trespass issue here. So the only question is whether you can have this long-term monitoring. And we did have cases that said at least for short-term monitoring. I couldn't tell you to what point. Maybe you know the cases better on that front. But we had cases that said you can attach and you can monitor for at least some period extending into the future. Why is it reckless or crazy for officers to think, well, maybe two months? Was it two months, three months here? That's within the realm of what the Fourth Amendment permits. Why is that? Well, one reason might be that if these officers who aren't being reckless or crazy will speculate, read the Hufford decision, they would see that the facts in Hufford were that a beeper was installed in a drum of caffeine, while it was still in the possession of the seller of the caffeine before it got into Hufford's possession. And they monitored it for a couple hours on a single day. And then they had a second beeper. And they got a warrant to do that. So the court in Hufford said the first warrantless thing wasn't a problem because it didn't involve any expectation of privacy of Hufford because it was done when it was in the hands and possession of the seller of the caffeine, the chemical. Do you remember the first opinion of the Moreno decision, the one before the remand from Supreme Court? And I remember it well myself because I spent a lot of time working on it. But the theory the panel adopted there is, look, so long as you're out in public and showing your face, you don't have an expectation of privacy at all. So police can follow you, you're seen, if they pick you up on camera or something. So it didn't have anything to do with trespass. It didn't have anything to do with electronic monitoring or anything else. The theory was not, I think, says if you're out in public, and they cited a couple of other cases, you don't have an expectation of privacy because you're out in public. You're not hidden in a tent or in your house or in an office or something like that. And that, why isn't that a theory that is fully supported by our pre-Pineda-Moreno case law that a reasonable officer could have relied on? You know, I read the cases as saying, so long as you're out in public, you know, as you know, I disagree with that myself. I've said so. But why couldn't a reasonable officer look at the case law just like the original Pineda-Moreno panel did and say, all this analogy stuff doesn't matter, all this trespass stuff doesn't matter. What matters is you're out somewhere in public when people can see you. Because the reasonable officer would have known that the Knotts decision said, we'll leave for another day the question about whether extended long-term monitoring that goes on for weeks or months and amounts to a dragnet is okay or not okay. And they kind of hinted at what later became obvious in Jones that this may not be a term. But we still don't know the answer to that question. Yes, but if- I mean, the Supreme Court specifically ducked the question. Justice Alito and I think Sotomayor, I mean, they obviously wanted to get to it and had an answer. And we all wish they had. I mean, it would be very nice for everybody if they had given an answer one way or the other. But we don't have an answer to that still. I mean, the Supreme Court goes off on a trespass hearing, completely on a trespass hearing, and leaves the whole dragnet question still open, right? Yeah, I think so. So here, I mean, here the government has acknowledged, I think rightly so, that there's no question about the Fourth Amendment being violated. The question is whether the officers, in acting as they did, were okay to do it because of what the cases had said up to that point. It was violated by the trespass. It was violated by the trespass, not by the dragnet, not by the observation hearing. It was violated by the fact they attached the thing. And what is there out there that foreshadows that theory? You have to go all the way to Olmstead, right, don't you? You have to go to 1929 to come up with that theory. Justice Scalia likes old cases. He's often said, the older the case, the better the case. Don't give me any of these new precedents. Well, yeah, I suppose. But I think here, the way this case was litigated below, when the court allowed the withdrawal of the plea to relitigate the question following Jones, was that the government conceded that there was a Fourth Amendment violation, and the question was whether the agents were reasonable or had acted consistent with what Davis says in doing what they did. So I don't think the government's concession that there was a Fourth Amendment violation was parsed out as to some limited violation vis-a-vis the trespass theory newly enlivened by the Jones decision. They just said, there is a Fourth Amendment violation. The question we're litigating is whether the exclusionary rule applies. And they urged that it didn't, for the reasons set forth in Davis. And so although there's, you know, different language in Davis, I think the key language in Davis is the one I quoted, because what's the point of the Supreme Court saying that binding precedent that specifically authorizes the practice in question actually means non-binding precedent, that it might be reasonable to interpret, would not find the practice in question to be illegal? What do you want us to do given our constraints here? Okay, so I would like a two-line procuratorial affirmance and a concurrence written by one or the other of you, joined in by the other two, which says we seriously question the correctness of Pineda-Moreno and urge the in-bank court to take this matter up. And one of the reasons is... Anything else we can do for you? You asked the question, Your Honor. I did ask the question. So I actually have prepared that answer a little bit in advance. Thank you. You're out of time. We'll hear from the government. Thanks for being candid right at the beginning. I mean that. I mean, you didn't just walk right into the issue, which is why we're here. Thank you. May it please the Court, Assistant United States Attorney Jonathan Lee for the United States. I would argue to the Court that the Pineda-Moreno decision of this Court was correctly decided, that it is binding precedent, and that it mandates affirmance of what occurred below. And he agreed with that. I'm sorry, Your Honor? The counsel agreed with the conclusion you said. He didn't agree that it was correctly reasoned, but he does agree it's binding. Well, I can get into the reasoning in Pineda-Moreno and Davis. What you have is. . . It's a question that transcends this case and it transcends the particular issue about trespass. The question is, at what point can an admitted constitutional violation be essentially vitiated because police relied on prior precedent? And the defendant or defense counsel is arguing that that should only be the case where the prior precedent actually manifests itself, not where you'd have to go to extensions. That's the argument, that they can't get a good-faith exception unless you have a precedent directly on point. And we don't, right? We don't. But really the only issue before the Court is with respect to the duration of the monitoring of the device. Now, there were in existence, at the time of the installation of this device, Ninth Circuit cases that said the installation and monitoring. . . I thought it was a trespass, not the duration. The duration issue is still not resolved. The only thing we know now that we didn't know before the Supreme Court's Jones opinion is that attaching something to a vehicle is a trespass. So that's the violation that occurred here, right? They attached something to the vehicle. So it doesn't matter whether they do it. . . It's a large device or a small device. It doesn't matter whether it's there for a minute or a day or an hour or two weeks or two months. That only matters in terms of prejudice or, you know, what the effect of it. But the violation occurs as soon as they attach the device. And there's no case that we have that says attaching the device is okay, is not a constitutional violation. That's correct. And there are Supreme Court cases, going back to the pre-CATS line of cases, which the Supreme Court in Jones told us have never been overruled. Somewhat a surprise to some of us, but, you know, there it is. The Supreme Court says that all cases that go off on a trespass theory are still good law. And then CATS put a layer on top of that and say, well, if you don't have a trespass, you can still have a Fourth Amendment violation if you have a reasonable extension of privacy that's defeated by the action. But you don't need to get there because you have a trespass. A trespass has always been a Fourth Amendment violation. We don't have any case contrary to that. We have lots of Supreme Court cases that say that's the case. The Supreme Court has now told us that those cases are still and always were good law. So how does an officer get off attaching this device and claim good faith when the law is that attaching things is not good faith? Because this occurred pre-Jones. This occurred pre-Jones. Well, but Jones tells us we make no change in the law. Jones says this has always been the law, and people who read CATS as superseding Olmstead, I think it's Olmstead, am I right? Yeah, Olmstead. Let's go back to first year of, sorry. But that was a trespass case. That was a case where the Supreme Court says no trespass, no Fourth Amendment violation. And that sort of hummed along, hummed along until 1964, 1968 with CATS when it became untenable. And I guess everybody thought that CATS superseded it. But the Supreme Court says no. The cases have always been there. It's always been illegal. And the only hint we have along the way is Loretta v. Teleprompter. Remember Loretta v. Teleprompter? It was a taking case. That was a case where in New York they authorized attachment of a little device on the roof for distribution of cable. And Justice Marshall wrote the opinion, I believe, saying even the tiniest trespass is a taking. And that's sort of the hint that, you know, trespasses, actual attachments of things are different. Well, but there were nine circuit cases that said technical trespass was not a violation of the Fourth Amendment. I mean, there had to have been some exercise by the defendant of a reasonable expectation of privacy. And you have the curtilage cases where unless the defendant has taken some affirmative step to either block view or block access to the curtilage of his property, even though an officer steps on the curtilage and that is a technical trespass, there's no Fourth Amendment violation. So I don't know how you square the two. I mean, there are clearly cases dealing with that issue of curtilage and trespass that were recognized. I think you're sort of playing into your opponent's hands because what he's saying is, look, that's why you need a case directly on point. If you have a case directly on point, fine, the police can rely on it. If they have to go to law school to figure it out, then they can't rely on it. You know, if you have to sort of argue by analogy, if it's the kind of thing that might show up in a law school exam could guide the way, then you don't. Sure, if there is binding authority, Supreme Court, a nine-second authority, saying you attach this thing to the vehicle and that's not a Fourth Amendment violation unless you have some sort of limitation like expectation of privacy. But there are no cases like that. We don't have any cases saying attachment is not a Fourth Amendment violation. Well, MacIver said that. I mean, there were clearly cases in existence at the time of the agent's conduct in this case which authorized them to install the device and to monitor it for some period of time. There was no case that said you may not monitor it without a warrant if you monitor it for any period of time. What was the longest our cases had allowed the monitoring to occur, pre-Jones? Pre-Jones, I think a matter of days or weeks, yes. And here it was three months? Four months. Four months. And Penina Moreno, which was decided shortly after the conduct in this case, I think was two months, July to September. But, you know, as the Court recognizes, no court to date has instructed us about what period, what duration of monitoring will trigger the warrant requirement under the Fourth Amendment. The Supreme Court has ducked that issue on two occasions. You know, given that, I don't see how it could be unreasonable for the officers, given what the case law was in existence at the time, to do what they did and have it upheld as... You read Davis as establishing basically a qualified immunity-like reasonableness standard? That's how we're supposed to judge the officers' actions? You're right. It is essentially the other Leon, good faith doctrine, applied to a situation where there's been a change in the law. That's what Davis has done. And given the technological advances in devices, tracking devices, and the Court's concern for the duration and the nature of the monitoring, which, you know, up until Jones, really, well, okay, the Supreme Court did mention it briefly in Knotts, but up until Jones, you know, was never material to a Court's decision on this issue. You know, but just as I hear you make the argument, it just sounds to me like until the officers are basically allowed to just keep extending, keep extending, until a Court says, no, you must stop, and you basically would say, well, until there's on-point authority that says you may not do this anymore, basically the officers can just keep extending? Well, but the problem is that, you know, we have to deal with the universe of cases in existence at the time the officers acted, and a decision has to be made based upon that state of the law at the time the officers acted, and that's precisely what the District Court did here, and the Court did in Davis. I mean, you look at the law in existence at the time the officers acted. You cannot do anything else. That's what you're left with. You have to make a decision. Davis is a very different case than this one. Here, just as you've conceded, you had authority that led you up to maybe two weeks, so the officers say, hey, two weeks, two months, two years, who cares, there's no Court saying that we can't do this, so let's, we don't need to get a warrant, why bother? I mean, isn't that where your argument just logically leads, the police can just keep extending existing authority, existing precedent, until a Court finally says, no, that's too much? I think that's the only thing you can do. So you would say? Because the Court, you have decisions that are fact-based, and until a case comes before the Court where the duration of the monitoring is four months, six months, a year. So you'd say even post-Jones then, if this was being decided on the expansion, under our precedent, of the duration that all of this took place after Jones, and the only issue were duration, that they'd still be in good faith to have attached it for four months? Under Pineda? Under Pineda-Moreno. You would say that? I would say that. Okay. I don't think you can draw a distinct, Pineda-Moreno, this Court, Pineda-Moreno clearly was not troubled by the fact that there was a two-month monitoring of a GPS tracking device. So it's okay to now jump it to four months? In the absence, I don't think you can draw a meaningful distinction between two months and four months. Okay. Two months and two years? That's, again, You're going to have to say no. There's no difference. There's no. Because there's no case. I can't say it. Based on the cases in existence today, I cannot say that there's a difference. But you could attempt to carve out an unreasonable limitation. In other words, it can't be so long that it becomes unreasonable. Right. On a theoretical level, you could say at some point it's going to become unreasonable, but we don't know where that line is. All right. Okay. Thank you. Thank you. Mr. Wilson, we're out of time. Would you like to take a minute or two? Thank you, Your Honor. I guess what I would say is that I see the rule of Davis as essentially not establishing a rule of self-reliance, that the officers can rely on themselves, but it's establishing a rule that officers should rely on people who they can't actually ignore, like circuit court judges in the circuit in which they carry out their police activities. If they're authorized to do something by precedent, then they should do it. If they're not, they shouldn't be indulging themselves and concluding, well, no case says we can't do it, so we can do it. What they should do then is what the Fourth Amendment prefers, which is go get a warrant. It's not that hard to do. And they didn't do it here, and so that's why I think the outcome should be, as I said, a concurring opinion, even though this panel is bound by Pineda-Marino, as much as I might not like that to be the case. Thank you. Okay, thank you. Case decided. We'll stand some minutes.
judges: Kozinski, Fisher, Watford